UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GWENDOLYN WHITE,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA,

    *Defendant.*

No. 24-cv-0769 (DLF)

**MEMORANDUM OPINION**

    Gwendolyn White brings this action to recover attorneys' fees and costs incurred in administrative proceedings against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (IDEA). Before the Court is White's Motion for Attorneys' Fees, Dkt. 8. For the reasons that follow, the Court will grant the motion in part.

**I.    BACKGROUND**

    White initiated and prevailed in the administrative process on behalf of her son. Compl. ¶ 5, Dkt. 1. She now seeks attorneys' fees and costs, Pl.'s Mot. at 2, and post-judgment interest, Pl.'s Mot. at 20.

**II.    LEGAL STANDARD**

    Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). An attorney may "recover for work when there is 'a clear showing that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed.'" *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733, 736 (D.C. Cir. 2018) (per curiam) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1335 (D.C. Cir. 1982) (per curiam)).

In evaluating a motion for attorneys' fees and costs, a court must determine (1) whether the party seeking the fees is a "prevailing party" entitled to fees; and (2) what fees are "reasonable" in terms of the hours expended and the hourly rate claimed. *See Robinson v. District of Columbia*, 61 F. Supp. 3d 54, 58 (D.D.C. 2014).

The party requesting fees bears the burden of demonstrating the reasonableness both of the hourly rate sought and of the hours expended. *See Dobbins v. District of Columbia*, No. 16-cv-01789 (DAR), 2017 WL 4417591, at *3 (D.D.C. Sept. 29, 2017); *Wood v. District of Columbia*, 72 F. Supp. 3d 13, 18 (D.D.C. 2014). A party may satisfy the latter burden "by submitting an invoice that is sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Wood*, 72 F Supp. 3d at 18. If a party satisfies this burden, the number of hours billed is presumed reasonable, and "the burden then shifts to the [opposing party] to rebut this presumption." *Dobbins*, 2017 WL 4417591, at *3 (citation modified). The district court retains discretion to reduce awards of attorneys' fees if "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F)(iii).

### III.    ANALYSIS

The District does not dispute that White is a prevailing party entitled to attorneys' fees under the IDEA. Def.'s Opp'n at 2 n.1. Instead, the District contests (1) particular time entries and the cost of White's expert; (2) the reasonableness of the requested rate; and (3) White's request for post-judgement interest. *See id.* at 3, 6–7, 20.

#### A.    Number of Hours Reasonably Expended

As an initial matter, the Court finds that White has satisfied her burden of demonstrating the reasonableness of the number of hours expended in this litigation. White's counsel has

provided a detailed invoice describing the nature of and hours dedicated to the billed tasks. *See* Invoice, Dkt. 8-1. Counsel also attests that they have maintained accurate and contemporaneous records of time billed and have exercised sound billing judgment by not billing for time that were not "reasonable charges in the litigation of this case." *See* Ostrem Decl. ¶ 6, Dkt. 8-4; *see also* Tyrka Decl. ¶ 7, Dkt. 8-5. The Court has reviewed the invoice and Mr. Ostrem's and Mr. Tyrka's declarations and finds White's counsel's billing practices adequate and the time devoted to each task presumptively reasonable. Accordingly, the District bears the burden of rebutting this presumption. It presents four grounds for reducing White's counsel's hours.

*First*, the District claims that White's counsel billed time relating to a non-compensable resolution session. *See* Def.'s Opp'n at 4; Pl.'s Ex. 1 at 3–5 (time entries dated Jan. 22, 27, 29, 2021 and Feb. 2, 24, 26, 2021); 20 U.S.C. § 1415(f)(1)(B); § 1415(i)(3)(D)(ii)–(iii).

White disputes whether a resolution session took place. *See* Pl.'s Reply at 2–3, Dkt. 12. As she explains, a resolution session requires the presence of the parents, the "relevant member or members of the IEP Team who have specific knowledge" of the case, and "a representative of the agency who has decisionmaking authority." 20 U.S.C. § 1415(f)(1)(B); § 1415(i)(3)(D)(ii)–(iii). And if the plaintiff presents "specific, undisputed record evidence" that the required parties are not present, then the "plaintiff should not have these hours removed from their fee award." *Reed v. District of Columbia*, 843 F.3d 517, 524 (D.C. Cir. 2016).

But the evidence White presented is disputed and far from clear. The Hearing Officer noted that a resolution meeting was held on February 26, 2021. Hearing Officer Determination at 1–2, Dkt. 8-3. In addition, White's counsel concedes that one of the District's attendees "was a potential member of the student's IEP team." Ostrem Supp. Decl. ¶ 6, Dkt. 12-3. And although "DCPS made no offer of any kind to resolve the case," White's counsel provides no specific details

to suggest that the administrator present lacked decision-making authority. *Id.* ¶ 7. In sum, although the resolution session was unsuccessful, it appears that all parties viewed it as a resolution session, and the District complied with the statutory requirements by sending two representatives. Because the February 26, 2021, meeting appears to be a resolution session under the IDEA, the Court will deduct the 1.9 hours that plaintiff's counsel expended in attempting to schedule such a meeting. *See* Pl.'s Ex. 1 at 3–5 (time entries dated Jan. 22, 27, 29, 2021 and Feb. 2, 24, 26, 2021).

*Second*, the District argues that White's counsel spent an excessive 10.6 hours preparing a motion for summary judgment. Def.'s Opp'n at 4. In support of this proposition, the defendant cites to *Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 336 (D.D.C. 2015) and *Martini v. Fed. Nat. Mortg. Ass'n*, 977 F. Supp. 482, 488 (D.D.C. 1997). In *Merrick*, the district court found that counsel's 24.8 hours of work on five motions to amend filings and other motions to continue and to expedite were unnecessary. 134 F. Supp. 3d at 337. In addition to noting that those motions were unsuccessful, the court further found that counsel's descriptions were "too vague" to justify otherwise unnecessary motions. *Id.* In *Martini*, in contrast, the court allowed counsel to recover for time spent on a motion to compel because, although it was ultimately unsuccessful, "it was a motion which had to be litigated by plaintiff" and the issues "were neither clear nor well settled." 977 F. Supp. 482 at 488.

This case is more like *Martini* than *Merrick*. Ostrem attests that the time spent on the summary judgment motion "significantly reduced the time" spent to prepare for the hearing, and the hearing officer based his ultimate findings "on almost exactly the same evidence and testimony" in the motion. Ostrem Supp. Decl. ¶¶ 9–10. Thus, by filing the motion, counsel was "fully effective in protecting [his] client's interest." *Martini*, 977 F. Supp. at 488. The 10.6 hours were therefore reasonable.

4

*Third*, the District takes issue with 16.6 hours billed after the issuance of the Hearing Officer's Determination. Pl.'s Opp'n at 5. In response, White concedes that 11.6 of those hours are better billed to another case. Pl.'s Reply at 7–8.

The remaining entries on May 24, 2022, and June 17, 2022, note work directly related to the Hearing Officer's order. In particular, Ostrem attests that he reviewed education records in order to assess the suitability of the IEP and compensatory education plan that the hearing officer ordered. Ostrem Supp. Decl. ¶ 11; *see* Hearing Officer Determination at 13. The District concedes that work performed after the decision may be reimbursable. Opp'n at 5 (*citing McClam v. District of Columbia,* 808 F. Supp. 2d 184, 190 (D.D.C. 2011)). Because the remaining 5 hours are closely connected to the hearing officer's order, they were properly included.

*Fourth*, regarding expert fees, the IDEA itself does not support the recovery of expert fees, but "under District of Columbia [l]aw, a Court 'may award reasonable expert witness fees as part of the costs to a prevailing party,' in IDEA cases." *Wright ex rel J.J. v. District of Columbia*, No. 18-cv-2818 (ABJ), 2019 WL 4737699, at *6 (D.D.C. Sept. 28, 2019). The prevailing party bears the burden of establishing the reasonableness of experts' rates. *Id.* A party may meet this burden by providing documentation that the claimed rates "are based on the rates prevailing in the community for other experts providing similar services in similar cases." *Id.* at *7 (citation modified). Ostrem stated that the expert fees were "comfortably within market in this jurisdiction." Ostrem Decl. ¶ 9. White also submitted a declaration from the expert, establishing that her $150 per hour rate was standard for her work and in the industry. Dr. Nelson Decl. ¶ 4, Dkt. 12-5. This detail sufficiently established the reasonableness of the rate. *See Pryor v. District of Columbia*, 18-cv-0920 (GMH), 2018 WL 4782322, (D.D.C. Sept. 18, 2018), *R. & R. adopted*, 18-cv-0920 (JDB), 2018 WL 4778928 (D.D.C. Oct. 3, 2018).

5

**B.     Reasonable Hourly Rate**

The District also challenges White's counsel's use of *Laffey* rates and her application of current rather than historic rates.  *See* Def.'s Opp'n at 6–20.  Consistent with this Court's precedent,[1] the Court will apply the Fitzpatrick, rather than *Laffey* matrix because it "offers a superior measure of the prevailing market rate for complex federal litigation." *J.T. v. District of Columbia*, 652 F. Supp. 3d at 31–36.

The plaintiff bears the initial burden of "justifying the reasonableness of the rates." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  Courts consider (1) "the attorney's billing practices"; (2) "the attorney's skill, experience, and reputation"; and (3) "the prevailing market rates in the relevant community." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (citation modified).  The District only disputes the third prong.

To accomplish the "inherently difficult" task of establishing the prevailing market rate, *id.* (citation modified), White must "produce satisfactory evidence—in addition to her attorney's own affidavits—that her requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *James v. District of Columbia*, 302 F. Supp. 3d 213, 219 (quoting *Eley*, 793 F.3d at 104).  Plaintiffs have two paths: (1) A "litigant can show that IDEA litigation fall[s] within the bounds of complex federal litigation," meaning the Fitzpatrick matrix presumptively applies, *id.* (citation modified); or (2) "a fee applicant can establish the prevailing market rate by providing evidence of the fees charged,

---

[1] Many judges in this district have applied the Fitzpatrick matrix in both IDEA and other cases, even when the plaintiffs ask for the *Laffey* matrix. *See, e.g., Louise Trauma Ctr. LLC v. DHS*, No. 20-cv-1128 (TNM), 2023 WL 3478479, at *4 (D.D.C. May 16, 2023); *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 31 (D.D.C. 2023); *Rawlings*, 2025 WL 1432278, at *6 n.1; *Brackett v. Mayorkas*, No. 17-cv-0988 (JEB), 2023 WL 5094872, at *4 (D.D.C. Aug. 9, 2023); *Alavi v. Bennett*, No. 15-cv-2146 (RBW), 2024 WL 5056204, at *13 (D.D.C. Dec. 10, 2024).

and received, by IDEA litigators," *id.* (citation modified).  White pursues, and the District opposes, both options.

The D.C. Circuit has recognized that some IDEA cases are not entitled to full matrix rates. *D.L. v. District of Columbia*, 924 F.3d 585, 594 (D.C. Cir. 2019) (noting that IDEA cases may "fall within a submarket characterized by below-*Laffey* rates.") (citation modified).  In particular, if "individual IDEA plaintiffs litigat[e] non-complex cases primarily before an administrative body," courts have declined to apply full matrix rates.  *Id.*  White has failed to establish that this case is complex.  *Harrell ex rel. J.W. v. District of Columbia*, No. 24-cv-3611 (ZMF), 2024 WL 3640033, at *4 (D.D.C. Aug. 2, 2024).

To support her contention that IDEA litigation is complex, White points to six affidavits. All six are functionally identical and insufficient for the same reasons.  The affidavits present two main arguments.  First, they assert that IDEA cases require "specialized non-legal knowledge." Tyrka Decl. ¶ 19, Dkt. 8-5; Savit Decl. ¶ 7, Dkt. 8-9; Hecht Decl. ¶ 5, Dkt. 8-10; Moran Decl. ¶ 6, Dkt. 8-11; Mendoza Decl. ¶ 4, Dkt. 8-12; Hill Decl. ¶ 5, Dkt. 8-13.  Second, they assert that such cases allow for "limited discovery and pretrial exchange."  Tyrka Decl. ¶ 21; Savit Decl. ¶ 8; Hecht Decl. ¶ 6; Moran Decl. ¶ 7; Mendoza Decl. ¶ 5; Hill Decl. ¶ 6.  But many fields require specialized knowledge without being rendered inherently complex.  *Reed*, 843 F.3d at 525.  And limited discovery actually "may suggest that IDEA cases are not as complex as cases in which discovery is extensive."  *Id.*  In sum, these are "conclusory" claims routinely advanced in IDEA cases without sufficient "explanation."  *Id.*; *accord Rawlings v. District of Columbia*, No. 25-cv-2122 (SLS), 2025 WL 1432278, at *7 (D.D.C. May 19, 2025).

White also points to two circumstances where non-IDEA lawyers litigated IDEA cases, billing more than three times what White's attorneys billed.  Mot. for Fees at 14–15.  But this

illustration merely reframes the previous argument the Court has already rejected—specialized non-legal knowledge is insufficient to render a case complex. That non-IDEA lawyers required additional time to compensate for their limited specialized knowledge is unsurprising. But it does not render IDEA cases categorically complex.

Because White has not established that IDEA litigation is categorically complex, she must demonstrate the prevailing rate based on rates other IDEA litigators in the community received. *Reed*, 843 F.3d at 521. White first presents affidavits from her own attorneys. These alone are insufficient because she must "produce satisfactory evidence *in addition* to the attorney's own affidavits." *Eley*, 793 F.3d at 104 (citation modified). Moreover, neither affidavit is persuasive. Ostrem attests that his firm always "matched its hourly rates" to the LSI *Laffey* matrix. Ostrem Decl. ¶ 7. But he does not attest what rates he *received* in IDEA cases. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326. Indeed, his declaration undermines his proposed matrix because it states that he has settled for 100% of the USAO *Laffey* matrix. Ostrem Decl. ¶ 8. Although "the amount of fees that the District agrees to pay an attorney as part of a bulk settlement is not determined by market forces," *Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 62 (D.D.C. 2011), this variation serves to undermine Ostrem's assertion regarding the prevailing rate. Tyrka's declaration similarly attests to charging the LSI *Laffey* matrix but, apart from one instance in 2021, settling with the District at the USAO matrix. Tyrka Decl. ¶ 8–13. Although Tyrka's statement that "several clients pay the firm at the LSI *Laffey* matrix" fairs slightly better than Ostrem, *id.* ¶ 9, information about a few "fortunate case[s]" does not adequately document what an attorney "actually billed," *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326.

White also recycles five affidavits submitted by attorneys in two 2016 and 2017 fees cases. Pl.'s Ex. 6, Dkt. 8-6; Mot. for Fees at 8. But those affidavits encounter the same difficulties already

identified. Although they set their rates according to either the LSI or USAO *Laffey* matrix, only two even attest that they ever received those rates. Hecht 2016 Decl. ¶ 44; Tyrka 2017 Decl. ¶ 4. And neither provides any indication as to how many clients paid those rates, how recently they were paid, or whether those clients are representative of broader patterns. Because the affidavits fail to "recit[e] the precise fees that attorneys with similar qualifications have *received* from fee-paying clients in comparable cases," *Eley*, 793 F.3d at 101, White cannot justify her assertion that the LSI *Laffey* matrix is the prevailing rate for IDEA cases. *Accord Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1, 17 (D.D.C. 2016).

What remains is three cases where courts in this district granted full *Laffey* rates. Mot. for Fees at 10–11. But two of those cases did not discuss complexity at all. *See U.F. v. District of Columbia*, No. 19-cv-2164 (BAH), 2020 WL 4673418, at *4 n.3 (D.D.C. Aug. 12, 2020); *B.J. v. District of Columbia*, No. 19-cv-2163 (ZMF), 2020 WL 8512639, at *3 n.2 (D.D.C. Nov. 9, 2020). And the District points to a number of more recent cases applying lower-than Fitzpatrick matrix rates. *See, e.g.*, *Harrell*, 2024 WL 3640033, at *4; *Bond ex rel. K.M. v. Friendship Pub. Charter Sch. Bd. of Trs.*, No. 23-cv-0367 (ZMF), 2023 WL 8710370, at *5 (D.D.C. Dec. 18, 2023)*; see also James v. District of Columbia*, 302 F. Supp. 3d 213, 229 (D.D.C. 2018); *Joaquin*, 188 F. Supp. 3d at 20; *Rawlings*, 2025 WL 1432278, at *8 ("The Court thus joins scores of other courts in this District in applying 75% of the rates in the matrix.") (collecting cases).

Finally, White argues that the *Laffey* matrix is a reasonable rate because anything lower would be insufficient to "induce a capable attorney to undertake the representation." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). White offers declarations from attorneys who state they have had to turn away viable IDEA parents. *See, e.g.*, Ostrem Decl. ¶ 13; Savit Decl. ¶ 13; Hecht Decl. ¶¶ 9, 12; Mendoza Decl. ¶ 12; Hill Decl. ¶ 10. But most of the problems these attorneys point to

9

relate to the District's delay in payment, refusal to negotiate fees, and personal reasons such as the unpleasant nature and inconsistency of fee litigation. *See, e.g.*, Ostrem Decl. ¶ 14; Tyrka Decl. ¶ 28–32; Savit Decl. ¶ 13; Hecht Decl. ¶ 13; Moran Decl. ¶ 13; Mendoza Decl. ¶ 12; Hill Decl. ¶ 13. In addition, one attorney attests he continues to take IDEA work and accept 75% of the matrix, undermining White's assertion. *See* Hill Decl. ¶ 14. White therefore has not met her burden of demonstrating competent counsel would be discouraged from IDEA litigation.

Because White fails to prove the reasonability of the full matrix rate, the Court will follow precedent and apply 75% of the Fitzpatrick matrix rate. *See Harrell*, 2024 WL 3640033, at *5; *Bond*, 2023 WL 8710370, at *6 ("An IDEA case that is not particularly complex provides no reason to depart from the majority of IDEA cases that have found 75% of applicable rates to be reasonable.") (citation modified). Although the District has not engaged in dilatory tactics, the Court will apply the current Fitzpatrick rate since over four years have passed since Ostrem's representation began. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 282 (1989); *McNeil v. District of Columbia*, 342 F. Supp. 3d 156, 162 (D.D.C. 2018); *West v. Potter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013).

C. **Post-Judgment Interest**

White requests an award of post-judgment interest in the event that payment from the District is untimely. *See* Pls.' Mot. at 20. The plaintiffs contend that such an award is necessary given "the District's long history of ignoring the timelines in orders for payment of IDEA attorneys' fees." *Id.*; *see* Ostrem Decl. ¶ 9 (noting the District's failure to timely reimburse for reasonable attorneys' fees); *J.T.*, 652 F. Supp. 3d at 37 (noting that the District's "poor payment track record" justifies an award of post-judgment interest); *B.J.*, 2020 WL 8512639, at *5 (imposing post-judgment interest based on the District's "consistent failures to timely pay

judgments") (collecting cases).  Given DCPS's history of untimely payments to successful IDEA litigants, *Cook v. District of Columbia*, 115. F. Supp. 3d 98, 106–07 (D.D.C. 2015) ("[The District's] intransigence regarding IDEA attorney's fees and its regular refusal to reimburse in a timely fashion is well-documented."), the Court finds it reasonable to award post-judgment interest pursuant to 28 U.S.C. § 1961(a), *see* 28 U.S.C. § 1961(a) (permitting interest to be ordered on "any money judgment in a civil case recovered in a district court . . . from the date of the entry of the judgment"); *see also Bond*, 2023 WL 8710370, at *8 (finding that a poor track record is not even "prerequisite to the award" of post-judgment interest).

## CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Attorneys' Fees is granted in part.  A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

July 22, 2025